We have a lawyer, Juan Perez, and he gives us his opinions. It's important to serve the public's qualifications. In action, law enforcement officers must be responsible to operate in such situations so that every civil security and freedom of speech and the support of law enforcement officers in each of the law are fully vetted and responded for all such issues. If you are a civil security and freedom of speech and you're a civil security fellow, that is a non-judgmental case. Now we point this court to Harper, Howard, and Rayburn. All of those cases, so in all of those cases, law enforcement was going to surveillance. In the latter two cases, this court said that the surveillance was not sufficient. And in Harper, this case was just very sufficient because there was a representative on one of the counts. And in Rayburn, there was no surveillance. This court said, Harper, in all those two cases, that law enforcement did not make the most basic due diligence to assess the social situation in which she was, that she didn't overreact, or she didn't make false statements, that she didn't have criminal connections with Mr. Perez, that she didn't have a relationship with Mr. Perez, that she didn't have sex addicts, and that 28 years ago, she was a firearm smuggler. And she didn't have sex addiction. So how did she know that this witness was obviously Mr. Perez Perez? And this court was going to try to see if she was pointing to the resources that she would want to do that at this court. And you went home to the scene of violence, too. They knew that the police said that she was, on the first year, was being interrogated and being prosecuted. They believed that she had been out of the area at some point, or not been out of the area, and perhaps seen Mr. Perez, and the defense was fine to tell you what she had seen and what she did with him and what he had said. Now, that is not strong evidence. It is not strong enough to say that Mr. Perez had been responding to any kind of reprisals, as opposed to simply holding him back or, as a frequent listener, not having a relationship with Mr. Perez. Now, the law enforcement and charges against Ms. Perez show you that these were illegal activities. Ms. Perez would have chosen to go to the Supreme Court and be acquainted with Mr. Perez, and see if he could get her on the score, which would show that he could not have taken her along and that he was going to interrogate her, and that he was in a very small range. He was only six-and-a-half inches shorter. Or he could have gotten a search warrant, which, at the Supreme Court, said, in the middle of her interrogation process, tried to see whether she truly existed at home and attempted to see if she was at home. Or three, the law enforcement officers initially held the charges against her on the grounds that Ms. Perez actually resided in the apartment twice throughout each of our four sentences charged. They could have attempted, they could have asked her to come outside and usually they could have arrested me on the basis that they were on the score, or on the grounds that they could have asked Mr. Perez if that was the case. In the event that Ms. Perez did, they would believe that the problem comes to being considered justice or if it's something that Ms. Perez ordered. Okay. Well, yes. She's still here. And in this case, she did not have an address on the top of her list. Ms. Perez, we can see, as a rule, she lives just up in Hartford. In Hartford? That's what I thought you said. Up in Wilson? Okay. Correct. In Hartford, there are only four men, just like the folks here, that they're also police servicemen. Those are the folks that you're interviewing. The police servicemen, these are the individuals that came to the house. The police knew that there was a small group and that it was still the family that was there. And they saw that Mr. Harford's associates were parked outside. They were all of the same age, only the two people were separate. And that was just their decision. Next here, we have the 27-year-old informant that is now on the list. He's not basically just someone called Harford. He's very specific. He's the son of his father. So, I think it's huge. I think it's absolutely huge. I think it's absolutely incredible. It's totally, that he's here, living there, as opposed to just a criminal case, where he would have to be served. And on the basis of that, he, for a lot of times, has just been an angel of hope, trying to get the search warrants, and then, I think, has agreed to fight the mission before it could be reached. And then, in turn, he's been on the list for two and a half years, and again, the evidence that he's been on the list speaks for itself. Now, the other subject that I'm going to mention will focus on what's in some of the other subjects. I'm going to bring up a key historical point. I mean, it's something key that's been the issue in the firearm that the jury is definitely going to be discussing. It's something that, in the jury instructions, the jury just brings a kind of security guarantee to the jury in addition. And this is the firearm that is essentially the weapon that's the weapon of prosecution. And those are the two things. I'm going to make sure that you see what I mean. And we can discuss that in our next session. Let's see if you were somewhere where you thought that this was a good idea. And let's see if we can just bring it to our foremen and see if we can get this useful to them, so we can start working on this issue for a few months. So, let's do that. So, we're going to start with this group of honoraries, but certain solicitations can possess a firearm that matches this group of solicitors. And that's absolutely correct. Minority engineers, judges, parents, students, families, more we need to attach what is a strong reference group of honoraries to the lookout. We need a small box we have here so that we can have references in close proximity to anybody who does know where it is. And we need to bring off that individual who is stating honestly, clearly, and absolutely knows that she does not use weapons. There is absolutely no indication of her speaking about her relationship with she had the uniform, the gun, whether she had a mission to manage the gun. So, I think the origin here is you've got an entrepreneur in the city and a station in one of the reasonable towns who has got the backpack and he's got  in a weapon and he's got      pocket and turns it back around and puts it back into his pocket and does not even have a weapon in   and  it back around and does not even have a weapon in his pocket and does not even have a weapon in his pocket and     a weapon  his pocket and does not even have a weapon in his pocket and does not even have a weapon in  pocket and does not even have a weapon in his pocket and           not even have any weapons in his body and does not have  in his pocket in his hand in   and does not have in his pocket in his hand in his pocket which is a pocket in his hand which is a pocket in hand which is a pocket in hand so it has a separate I  see      is a pocket in hand which is a pocket in hand which is a   hand which is a pocket in  which is a pocket in hand which is a pocket in hand which is a pocket in hand which is a pocket in    a pocket in hand which is a pocket in hand which     hand which is a pocket in hand which is a
judges: D.W. Nelson, Tashima, Owens